## THE WESTERN PUBLISHING HOUSE v. SCHOOL-DISTRICT No. 1 OF THE TOWNSHIP OF LOCKE.

*Schools and school-districts—Authority to purchase apparatus.*

1. A purchase of " Yaggy's Anatomical Study," an atlas containing 40 or 50 pages of plates and printed matter prepared as an aid in teaching anatomy and physiology, with the special purpose of showing the effect of alcohol and nicotine upon the human system, can only be made so as to charge a school-district when authorized by a vote of the qualified electors thereof, lawfully assembled; citing How. Stat. § 5052, subds. 7, 12; Id. § 5073, subd. 6; *Gibson v. School-dist.*, 36 Mich. 404.

2. While the atlas in question may be convenient, it is not absolutely necessary in order that effect may be given to the purpose of 3 How. Stat. § 5067, which requires that instruction shall be given in physiology and hygiene, with special reference to the nature of alcohol and narcotics and their effect upon the human system, by the aid of text-books in the case of pupils who are able to read, and as thoroughly as in other studies pursued in the same school, said text-books to be first approved by the State Board of Education and selected by the school board.

Error to Ingham. (Person, J.) Submitted on briefs, December 2, 1892. Decided December 22, 1892.

*Assumpsit.* Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Franklin S. Porter,* for appellant.

*Luke S. Montague,* for defendant.

DURAND, J. On or about April 24, 1888, George R. Avery, who was the assessor of the defendant school-district, had some talk with plaintiff's agent about the purchase of Yaggy's Anatomical Study, which is an atlas containing 40 or 50 pages of plates and printed matter

prepared for teaching anatomy and physiology, with the special purpose of showing the effect of alcohol and nicotine upon the human system. Thereupon the plaintiff's agent applied to Oscar F. Perry, who was the director, to sell the study to the district. A contract for the sale to the district was then made, and signed by Oscar F. Perry, upon which the plaintiff's agent took the contract or order to George R. Avery, the assessor, who also signed it. He then took it to George Hunt, the moderator of the district, for the purpose of obtaining his signature, but he refused to sign it. It is admitted that neither previous to nor at the time of signing the contract were the district board, or any two of them, together, nor did they act together as such in reference to the contract, but that they acted separately in signing it. After it was signed the plaintiff, in pursuance of it, sent the study referred to to Mr. Perry, at Perry, Shiawassee county, with an order to be filled out or signed, providing for the payment of $35. The order reads as follows:

"LOCKE, MICHIGAN, April 24, 1888.

"*Assessor of School-District No. 1, Township of Locke, County of Ingham:*

"Pay to Western Publishing House, or bearer, on the first day of January, 1889, at Exchange Bank in Williamston, Michigan, the sum of $35.00, out of any moneys in your hands belonging to said district in incidental fund, for one copy of Yaggy's Anatomical Study, with interest at 7% per annum. By order of the board."

When the study and the order were received, Mr. Perry signed the order as director, and sent it by his daughter to Mr. Hunt, the moderator, who also signed it, and returned it to Mr. Perry, who forwarded it to the plaintiff, and took the study to his own house. Mr. Perry, the director, and Mr. Hunt, the moderator, were not together when the last order was signed, and the school board never met together as a board to act upon the question of the

purchase of the study. At the annual meeting of the school-district in September, 1888, Mr. Perry took the study to the meeting for the voters to examine, and he made a report of what had been done in reference to its purchase. The district refused to make the purchase of the study, or to recognize what had already been done in that direction, and the district has ever since that time refused to adopt the report of its officers or to accept the study. The study has never been used in the school, and has been in the possession of Mr. Perry, in his house, ever since it was received, and there has been no vote of the district adopting it as a text-book. After the annual school meeting in September, 1888, Mr. Perry wrote the plaintiff that the district refused to accept the study, and offered to pay express charges both ways if plaintiff would take it back. This offer the plaintiff refused, and, when the order became due, demand for payment was made and refused, and this suit was then brought to recover upon it.

The circuit judge found, as a conclusion of law, that the contract of purchase was without authority, and that the order was not a valid claim against the district, and gave a judgment in favor of the defendant.

We think the circuit judge was right. The director is expressly prohibited from making purchases of this character by subdivision 6 of section 5073, How. Stat., which provides that—

" Nothing herein contained shall be construed to authorize the director to purchase charts or any apparatus to be used in the school room without a vote of the district authorizing the same."

Neither can he gain any power by joining with the other members of the district board in making such purchase, for the board itself is not authorized to do so. *Board of Education v. Common Council*, 80 Mich. 548. Purchases of this character can only be made when authorized by a vote

of the district, and the power to make them is given to the qualified voters of the school-district, when lawfully assembled, and to no one else, as is seen by a reference to subdivision 6 of section 5073 referred to, and subdivisions 7 and 12 of section 5052, How. Stat. See, also, *Gibson v. School-Dist.*, 36 Mich. 404.

Section 5067, How. Stat., as amended by Act No. 165, Laws of 1887, does not change the general rule as above stated. While these charts may be convenient, they are not absolutely necessary in order that effect may be given to the purpose of the law. *Yaggy v. District Tp.*, 80 Iowa, 121 (45 N. W. Rep. 553).

The circumstances of this case show plainly the wisdom of the provisions of the statute which confide the power of making purchases of this character to the qualified voters of the school-district. They undoubtedly save the people from many useless and extravagant purchases urged by interested parties upon school-district officers when met (as they were in this case) singly, and who, in the hurry of private business, are often induced to sign contracts to which they would not consent if given an opportunity to have the subject fairly discussed at a regular meeting of the district board, or at a meeting of the qualified voters of the district.

The judgment is affirmed, with costs.

The other Justices concurred.