dence here to show that, when the intestate undertook to pass to the west side of the avenue, the car which struck him was from 90 to 125 feet away. Walters testified:

"I had seen the southbound car coming from the ferry before the northbound car came to a stop to let the deceased off. The southbound car, when I first saw it, was well up the block—well up the block when I first saw it—the block between Ninety-First and Ninety-Second streets; more than a block away from where the accident happened when I first saw the car."

The witness further says:

"I want the gentlemen of the jury to understand that when the northbound car—the one on which the deceased had been a passenger—came to a stop, the southbound car, being the one that afterwards struck him, was over a block away; over a block, or about a block. And I want the gentlemen to understand that while the deceased was walking across the northbound track and the space between the two tracks, this car traveled a distance of over a block—the car which afterwards struck him traveled a distance of over a block while he was walking that short distance—about a block."

I think it was for the jury to say, under these circumstances, whether it was negligence on the part of the plaintiff's intestate to cross without looking when the car was a block away from him when he started to cross. If he had seen that car, he would have been authorized to believe that it was under the control of the motorman. We do not know whether the plaintiff did or did not look, but had he looked, and had he seen a car a block away when he passed behind the car from which he alighted, it was for the jury to say whether it was contributory negligence in attempting to cross. In this respect the case of Monck v. Brooklyn Heights R. Co., 97 App. Div. 447, 90 N. Y. Supp. 818, is in point. Here it cannot be said, as matter of law, that had the plaintiff looked, and had he seen the approaching car, he would have been chargeable with contributory negligence in proceeding to cross the tracks.

So far as the question of excessive damages is concerned, I think there is enough in the record to support the verdict.

I think the judgment should be affirmed.

---

(109 App. Div. 58.)

In re SKELLY.

(Supreme Court, Appellate Division, First Department. November 24, 1905.)

CONTEMPT—PROCEEDING—ABATEMENT.

Where, after hearing of an application to punish for contempt for failure to pay over money to a trust company, as ordered, the company was dissolved, the proceeding abated, and a subsequent order for punishment was coram non judice.

Appeal from Special Term, New York County.

In the matter of the judicial settlement of the account of Mary A. Skelly, executrix of Patrick Larney, deceased. From an order setting aside proceedings to punish said executrix for contempt, the representatives of a certain trust company appeal. Appeal dismissed.

Argued before O'BRIEN, P. J., and PATTERSON, CLARKE, INGRAHAM, and LAUGHLIN, JJ.

Frederick J. Swift, for appellant.
Charles O. Maas, for respondent.

PATTERSON, J. This is an appeal from an order of one of the surrogates of the county of New York, directing that proceedings to punish Mary A. Skelly, executrix, etc., for contempt be set aside. It appears that on the 28th day of February, 1905, a decree was entered in this proceeding in the Surrogate's Court, directing Mary A. Skelly to pay to the City Trust, Safe-Deposit & Surety Company of Philadelphia a certain sum of money within 20 days after the service of a copy of the decree. Upon her failure to do so, the attorney at law for the trust company, on his own affidavit, obtained an order to show cause why Mrs. Skelly should not be punished for contempt for such failure. The return day of the order to show cause was the 2d of May, 1905, and the application was then heard. On the 5th of July, 1905, the surrogate granted the application. On the same day the surrogate granted an order to show cause why the application theretofore made to punish the respondent, Mary A. Skelly, for contempt "should not be set aside," and why the decision granting such application should not be vacated and set aside, on the ground that the said proceeding abated prior to the making of such decision, and why the respondent, Mary A. Skelly, should not have such other and further relief as may be just in the premises. On this last mentioned application to the surrogate it was made to appear that on the 24th day of June, 1905, in the Court of Common Pleas No. 5 for the county of Philadelphia, in the state of Pennsylvania, the "City Trust, Safe-Deposit & Surety Company of Philadelphia" was dissolved, and a permanent receiver was appointed of all its property. Therefore, when the decision of the Surrogate's Court was made to punish Mrs. Skelly for contempt in not paying over moneys to the "City Trust, Safe-Deposit & Surety Company of Philadelphia," there was no such corporation in existence. The proceeding abated, and when the application now under review was presented to the surrogate, he had no power to entertain it, for the corporation making that application had been judicially dissolved; it had ceased to exist; it could neither sue nor be sued, so far as the record now before us discloses. Merchants' Loan & Trust Co. v. Clair, 107 N. Y. 663, 14 N. E. 414. There is no question involved here of the rights of domestic creditors as affected by the dissolution of a foreign corporation, or of the right of a receiver appointed in this state, if and when appointed.

The matter upon which the surrogate acted having been coram non judice, the appeal must be dismissed. All concur.